22 C. C. P. A. (Patents)

## In re RAUBER.

### Patent Appeal No. 3466.

Court of Customs and Patent Appeals.
April 8, 1935.

Marks & Clerk, of Washington, D. C. (J. T. Newton and Armand A. Cyr, both of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This appeal involves two claims relating to boiler structure. The Primary Ex-

aminer of the United States Patent Office rejected all the claims of appellant's application for patent, including claims 6 and 7, which were entered for the purpose of appeal. The Examiner's rejection was affirmed by the Board of Appeals, and the appellant has appealed from the board's decision to this court. The two claims involved in this appeal follow:

"6. In a boiler structure, horizontally disposed cylindrical steam and water drums arranged one above the other in a vertical row at one side of the boiler, headers at the other side of the boiler disposed at an inclination to the vertical row of drums providing a direct gas passage decreasing in cross sectional area upwardly, and groups of water tubes connecting the respective water drums with the headers decreasing in length upwardly in correspondence with the decreasing cross sectional area of the gas passage, and ribs on said tubes.

"7. A boiler as claimed in claim 6, characterized in that said groups of tubes are arranged in relatively widely spaced relation, and superheater tubes arranged between the groups of water tubes."

The references relied upon are: Mumford et al., 845,885, March 5, 1907; Rust, 868,891, October 22, 1907; Mosher, 872,077, November 26, 1907; Harter, 1,244,-603, October 30, 1917; Sargent et al., 1,311,-467, July 29, 1919; Primrose, 1,359,916, November 23, 1920; Bunker, 1,754,350, April 15, 1930.

Appellant's claimed invention, as defined by claim 6, consists of a boiler which has: (1) Horizontally disposed cylindrical steam and water drums arranged one above the other in a vertical row at one side of the boiler; (2) headers disposed at the other side of the boiler at an inclination to the vertical row of drums and providing a direct passage decreasing in cross sectional area upwardly; (3) groups of water tubes connecting the respective water drums with the headers and decreasing in length upwardly in correspondence with the decreasing cross-sectional area of the gas passage; and (4) ribs on the tubes.

Claim 7 differs from claim 6 in the provision that "said groups of tubes are arranged in relatively widely spaced relation, and superheater tubes arranged between the groups of water tubes."

The Examiner rejected the claims upon three main references: Bunker, Harter, and Sargent et al. Each of these references shows headers at both sides of a gas pass with one set of headers inclined toward the other to provide a decreasing gas pass. Sargent et al. shows a superheater placed between spaced banks of generating tubes in the decreasing gas pass. The Examiner relied upon the auxiliary references Rust, Mosher, and Mumford, as all showing boilers having banks of tubes connected to a series of drums positioned one above the other on at least one side of the setting. The Examiner stated that to use a series of interconnected drums at one side of the setting of Harter, Bunker, or Sargent et al., instead of a series of interconnected headers, would not involve invention. The Examiner pointed out that Mosher shows manholes at the right-hand side of his drums and spaces between his drums through which a superheater, such as is shown in Sargent et al., could be inserted.

The Board of Appeals, in affirming the decision of the Examiner, used slightly different language, but arrived at the same conclusion as the Examiner, and for the same reasons.

Appellant in this court frankly admits that all the features of his structure which the claims call for are shown in the prior art, if all the references are considered, but insists that no single reference contains all the features. He argues here that it was inventive to consolidate the desirable features of the references, and that his combination of these features has led "to the creation of an entirely new type of boiler possessing unexpected advantages." He argues that his type of boiler is designed for higher evaporative and pressure capacity, and that because of this fact the use of drums is highly desirable to insure the escape of vapor and because of the necessity in this type of boiler of maintaining the water tubes in clean condition. He points out additional merits in his construction which we do not think require discussion here.

It was the view of the board that there was no new or unobvious result flowing from appellant's substitution and combination, and that his provision for ribs on the tubes performs no other function than what was performed in the reference patents.

The ribs on the tubes were not discussed by the Examiner, and the board pointed out that this feature was added in the new claims entered for appeal after the final rejection of the claims in the application. This feature, however, was presented in

the original application in claim 2, which was canceled after the rejection.

We agree with the Board of Appeals that there was no invention in substituting the good features of one of the references for those in another or in combining the desirable features found in the prior art. The old elements which appellant has combined serve no different purpose than they did in the cited patents. The mere fact, if it be a fact, that appellant has a better boiler, does not necessarily imply invention. Mechanical skill alone may assemble or combine desirable features of the prior art and obtain better results than have ever been obtained, but the patent laws afford no reward for such an improvement.

The decision of the Board of Appeals is affirmed.

Affirmed.